**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 09-2134

ANA SAEZ, ET AL.,

Plaintiffs, Appellants,

v.

CITY OF SPRINGFIELD, MASSACHUSETTS, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, U.S. Magistrate Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*] and Howard, Circuit Judge.

Bryan K. Clauson for appellants.
Edward M. Pikula, City Solicitor, City of Springfield Law
Department, with whom John T. Liebel, Chief of Litigation, was on
brief, for appellees.

July 22, 2010

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**.    The named plaintiffs-appellants are mothers of teenagers who were not physically restrained by school officials of the defendant-appellee city from leaving their schools during instructional hours.  The defendant-appellee Martha Dodge[1] had the job of directing the school system in complying with relevant law.  The mothers brought action under state law (not before us) as well as 42 U.S.C. § 1983 and § 1988 seeking monetary and injunctive relief for violating Fourteenth Amendment due process: the mothers' right to preserve family integrity and the children's right to enjoy freedom from abuse and neglect.  The defendants responded to the legal issues raised by moving to dismiss on the ground that the complaint stated no federal claim on which relief could be granted, <u>see</u> Fed. R. Civ. P. 12(b)(6), and explained their policy of permissiveness by referring to a State education regulation limiting use of lawful physical restraint to instances in which children's unfettered behavior would raise a risk of "assault or imminent, serious, physical harm" to themselves or others, see 603 Code Mass. Regs. § 46.04 (2); absent such danger, the prevention of truancy would not be worth the burden of defending the liability claims that would doubtless eventuate.

---

[1] The surname is actually Von Merring; the case caption was never corrected.

As constitutional claims, those stated here do not rise to a substantial level, and the magistrate judge granted the motions to dismiss. But he also recognized the frustration the mothers quite naturally experienced when the schools' refusal to confine children to school premises during school hours effectively converted the State's compulsory attendance law into the children's option to wander off into trouble that the parents could not effectively prevent. He therefore went on to suggest that the mothers consider the possibility of relief from the general regulation through Individual Educational Plans for their children as special education students. In the meantime, appellant Ruiz has dropped her claim for injunctive relief because her son is beyond the age of compulsory education.

In any event, the appeals are without merit for reasons well explained in the magistrate judge's carefully prepared order. The mothers' claims that inadequate supervision in schools infringes their rights to maintain the integrity of their families are said to rest principally on Meyer v. Nebraska, 262 U.S. 390 (1923), and Pierce v. Society of Sisters, 268 U.S. 510 (1925), cases that held it to be beyond the power of states to limit a parent's choice to provide foreign language instruction in elementary schools or to resort to private education. But these cases recognized a parent's liberty to be free from state interference with certain education choices, not a right to require

state or local government to run public schools in a way a parent might think they ought to be administered. Hence the rule in this circuit, that any actionable interference with family integrity must be "directly aimed at the parent-child relationship." Manarite v. Springfield, 957 F.2d 953, 960 (1st Cir. 1992).

As for the claimed violation of the children's right to be free from abuse and neglect, the Supreme Court's discussion in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 199-200 (1989), is on point: "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being" (citing Youngberg v. Romeo, 457 U.S. 307, 317 (1982)). The situation of the children in this case is not even close to facts that would thus raise a state obligation. There is neither restraint of the child (that indeed is the very complaint), nor any practice or circumstance rendering the child unable to care for himself, nor failure to provide basic human needs of food, clothing, shelter, medical care or reasonable safety. As the Court later observed in Vernonia School District 47J v. Acton, 515 U.S. 646, 655 (1995), "we do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect'" (citing DeShaney, 489 U.S. at 200). Whatever the scope of a school's responsibility towards

-4-

its students, then, there is no apparent constitutional obligation to impose physical restraint upon teenagers not at immediate risk of harm to themselves or others.

Because the complaint was correctly dismissed, there is no reason to consider the subsidiary issues of qualified immunity and standards for injunctive relief.

**<u>Affirmed</u>**.